UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMIRA SALEM AND
KESHUNA ABCUMBY,

        Plaintiffs,

                                        Case no: 13-14567

v.

                                        Paul D. Borman
                                        United States District Judge

MICHIGAN DEPARTMENT OF
CORRECTIONS, ET AL.,

        Defendants.

_____/

## OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE
## (ECF NO. 44)

Now before the Court is Plaintiffs Amira Salem and Keshuna Abcumby's Motion for

Class Certification that was filed on August 11, 2016. (ECF No. 44.) Defendants Michigan

Department of Corrections ("MDOC") and Millicent Warren filed a response and Plaintiffs

thereafter filed a reply. (ECF Nos. 50 & 51.)[1]

---

[1] After this Court's previous Opinion and Order granting in part and denying in part
Defendants' motion to dismiss and for summary judgment and the Sixth Circuit's remand in this
case, the only claims remaining against Defendants Daniel Heyns, Thomas Finco, Randy
Treacher, Dennis Straub are official capacity claims for prospective relief. *See Salem v. MDOC*,
No. 13-14567, 2015 WL 1966727, at *8 (E.D. Mich. May 1, 2015) (available on the docket at
ECF No. 21); *Salem v. Michigan Dep't of Corr.*, 643 F. App'x 526 (6th Cir. 2016). The Court
notes that both Plaintiffs' and Defendants' current briefing assumes, with no discussion, that all
the individual Defendants, save Defendant Millicent Warren, are no longer parties to this case.
The Court, however, recognizes that "a suit against an individual in his official capacity is the
equivalent of a suit against the government entity." *Goodwin v. Cnty. of Summit, Ohio*, 45 F.
Supp.3d 692, 699-700 (N.D. Ohio, 2014) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58,
71 (1985)); *see also Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006) (finding that
"suing a municipal officer in his official capacity for a constitutional violation pursuant to 42
U.S.C. § 1983 is the same as suing the municipality itself.") Accordingly, the Court agrees that

A hearing on this matter was originally scheduled for Thursday, October 27, 2016. On October 24, 2016, the Court issued an order directing Defendants to file a sur-reply addressing the new proposed class definition that Plaintiffs raised for the first time in their reply brief. (ECF No. 52.) Defendants filed their sur-reply on November 1, 2016. (ECF No. 53.) A hearing on this matter was held on November 16, 2016. For the following reasons, the Court will DENY Plaintiffs' motion for class certification at this time.

## I. BACKGROUND AND PROCEDURAL POSTURE

On November 1, 2013, Plaintiffs filed the instant putative class action pursuant to 42 U.S.C. § 1983 on behalf of all female prisoners who "since October 2010, have been, are now, or will be hereafter incarcerated by [the Women's] Huron Valley Correctional Facility and who have been subject to sexual harassment and degrading and unhygienic treatment by MDOC custodial staff." (Compl. ¶ 16). Plaintiffs alleged violations of their Fourth, Fourteenth and Eighth Amendment rights and named six defendants in their action: Michigan Department of Corrections, Daniel Heyns, Thomas Finco, Randy Treacher, Dennis Straub, and Millicent Warren (collectively "Defendants").

Prior to 2009, a standard strip search at a correctional facility that housed female prisoners in Michigan was conducted by female correction officers who would require the prisoner to remove all her clothing, bend forward and spread her buttocks to allow for a visual inspection of the vagina and rectal cavity. Then, in 2009, Defendant MDOC consolidated all of

---

the official capacity claims remaining against Defendants Heyns, Finco, Straub, and Treacher are merely duplicative of Plaintiffs' claim for injunctive relief against the MDOC and will therefore formally dismiss those claims. *Goodwin*, 45 F. Supp.3d at 700 (holding that "when a civil rights complaint asserts a claim against a municipal entity and a municipal official in his or her official capacity, federal courts will dismiss the official-capacity claim.")

its female prisoners into one facility, the Women's Huron Valley Correctional Facility ("WHV").

At that time, Defendant Warren became the warden for the entire facility and the "chair portion"

of the strip search was added to the above described standard strip search procedure.  Plaintiffs

allege that the "chair portion" of the strip search procedure required that a female prisoner was

forced to sit on a chair, open her knees, and spread her labia to expose her vaginal cavity for

inspection by correction officers.  (Compl., at ¶ 25.)  Plaintiffs contend that the communal chairs

on which they were required to sit were "unwashed and unsantizied," were not lined with

sanitary paper, and were "wet with bodily fluids from other prisoners."  (*Id.*)  Plaintiffs further

claim that female prisoners who suffered from communicable diseases such as "HIV, AIDS,

tuberculosis, hepatitis C, sexually transmitted diseases, and other vaginal infections" were all

subject to the chair portion of the strip searches while on their menstrual cycles which resulted in

blood being left on the communal chairs used during the strip searches.  (*Id.*, at  ¶ 26.)  Plaintiffs

also allege that the chair portion of the search were conducted on "numerous female prisoners in

full view of" other female prisoners.  (*Id.*, at ¶ 19.)  This type of strip search was required after

every visit in which a prisoner was allowed physical contact with a visitor or was taken to any off

site location.  (*Id.*, at ¶ 27.)

On January 21, 2014, Defendants filed a "Motion to Dismiss and for Summary Judgment

based upon Qualified Immunity."  (ECF No. 11.)  After briefing and a hearing, the Court issued

an Opinion and Order granting in part and denying in part Defendants' motion to dismiss and for

summary judgment based on qualified immunity.[2] *See Salem v. MDOC*, No. 13-14567, 2015 WL

---

[2] This Court evaluated the motion under the standard for summary judgment as both sides relied upon affidavits and materials outside the pleadings.

1966727 (E.D. Mich. May 1, 2015) (available on the docket at ECF No. 21.)  Defendants

appealed the Court's Opinion and Order.  The United States Court of Appeals for the Sixth

Circuit succinctly summarized this Court's Opinion and Order:

> The district court agreed that the Eleventh Amendment barred Plaintiffs'
> monetary claims against the MDOC and the named defendants in their official
> capacities. It also found Plaintiffs' Fourteenth Amendment claim abandoned and
> their Eighth Amendment claim insufficiently established. The court then
> dismissed the Fourth Amendment, unreasonable-search claim against all the
> defendants except Warren because Plaintiffs "failed to differentiate [their]
> individual conduct."  Finding adequate the individual-conduct allegations against
> Warren, the court then denied Warren qualified immunity, holding that "Plaintiffs
> have identified a ... well established right to be free from a strip search that was
> performed in full view of other prisoners."  Finally, the court denied summary
> judgment on the claim for prospective injunctive relief, finding that the allegedly
> ongoing nature of the searches overcame Defendants' mootness argument.

*Salem v. Michigan Dep't of Corr.*, 643 F. App'x 526, 529 (6th Cir. 2016) (available on the docket

at 31).

On March 9, 2016, the Sixth Circuit affirmed this Court's denial of qualified immunity as

to Defendant Warren. *Id.*, at 529-531.  The Sixth Circuit rejected Defendant Warren's argument

on appeal that she was not personally involved in any of the alleged constitutionally offensive

searches, because she failed to raise the argument in her motion for summary judgment. *Id.*, at

530.  The Sixth Circuit then went on to "confine" its inquiry as to "whether the searches,

performed in the manner alleged by Plaintiffs, violated their clearly established Fourth

Amendment rights." *Id.*  The Sixth Circuit concluded "that viewing the facts in a the light most

favorable to Plaintiffs, we uphold the judgment of the district court denying qualified immunity

to Warren regarding the non-private searches." *Id.*, at 531.

The Sixth Circuit also held that it lacked jurisdiction to address Defendants' appeal from

4

this Court's finding that the claim for injunctive relief could proceed against the Defendants. The Sixth Circuit explained that while Defendants argued in their appeal that sovereign immunity barred Plaintiffs' claim for injunctive relief against Defendants based upon *Papasan v. Allain*, 478 U.S. 265 (1986), "the Defendants never invoked sovereign immunity as to this claim. Instead they relied on the Prison Litigation Reform Act in pressing for summary judgment on mootness grounds." *Id.* at 531.

The mandate issued on March 31, 2016. (ECF No. 33.) Thereafter, Defendants filed an Answer to the Complaint and the parties submitted a discovery plan. (*See* ECF No. 37, 39.)

## II. STANDARD OF REVIEW

"A district court has broad discretion to decide whether to certify a class." *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838, 850 (6th Cir. 2013) (citation omitted); *see also In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). A district court has such substantial discretion because "it possesses the inherent power to manage and control its own pending litigation." *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015) (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 559 (6th Cir. 2007). "The class action is 'an exception to the usual rule that litigation is conducted by an on behalf of the individual named parties only.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. --- , 131 S.Ct. 2541, 2550 (2011)). Critically, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 131 S.Ct. at 2551 (emphasis in original); *Comcast Corp. v. Behrend*, ---

5

U.S. ---, 133 S.Ct. 1426, 1432 (2013). The party seeking certification bears the burden in showing all prerequisites under Rule 23 are satisfied. *In re Am. Med. Sys.*, 75 F.3d at 1079.

When reviewing a plaintiff's motion for class certification, the district court must conduct a "rigorous analysis" of the Rule 23 requirements. *Comcast*, 133 S.Ct. at 1432 (citation omitted). The Supreme Court has recognized that this "rigorous analysis" will frequently involve some "overlap with the merits of the plaintiff's underlying claim." *Id.* To obtain class certification pursuant to Rule 23 "the plaintiffs must show that '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Whirlpool*, 722 F.3d at 850 (quoting FED. R. CIV. P. 23(a)). "These four requirements – numerosity, commonality, typicality, and adequate representation – serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members. *Id.* at 850-51 (citing *Wal-mart*, 131 S.Ct. at 2550).

In addition to meeting the four prerequisites of Rule 23(a), the proposed class must meet at least one of the three requirements set forth in Rule 23(b). *Wal-mart*, 131 S.Ct. at 2548 (2011). In the present action, Plaintiffs seek class certification under Rule 23(b)(3), which requires that the "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Plaintiffs bear the burden to show that all of the class certification prerequisites have been met.

6

*In re Whirlpool*, 722 F.3d at 851 (citation omitted).

## III. ANALYSIS

A.    Class Definitions

"[B]efore a court may certify a class pursuant to Rule 23, 'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (citation omitted); Newberg on Class Actions § 3:3 (5th ed.) ("Courts generally treat the requirement [of definiteness] as a precursor to Rule 23 and therefore examine the implicit requirements before proceeding the Rule's explicit requirements.")  In evaluating the "ascertainability" of a class, the Sixth Circuit has indicated that class definitions which are "amorphous" or "imprecise" do not meet this standard.  *Id.* at 537-38 (citation omitted).  Further,

> [f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.  In some circumstances, a reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective for proper inclusion in a class definition.

*Id.*, at 538-39 (citation omitted); Newberg on Class Action § 3.1 (5th ed.) ("Despite the specificity of Rule 23, courts have grafted on to it two additional criteria, often referred to as the 'implicit requirements' of class certification: that the class be 'definite' or 'ascertainable' and that the class representative be a member of the class.").

In their motion for class certification, Plaintiffs initially sought certification for the following class of individuals: "Current and future female prisoners who, since October 2010, have been incarcerated at the Women's Valley Correctional Facility, and subject to sexual and

7

physical assault and abuse, sexual harassment, and degrading sexually humiliating and unhygienic treatment at the hands of Huron Valley correctional officers and staff." (Pls.' Mot., at ¶ 1, *see also* Compl.)  Then, apparently conceding Defendants' arguments regarding the proposed class's lack of ascertainablity, Plaintiffs proposed a new and more narrow class definition in their reply brief: "current and former women incarcerated at WHVCF since 2010 who were eligible for offsite trips and contact visits and were thus, pursuant to the practice of WHVCF, subject to the 'chair portion' of Defendants' strip searches." (Pls.' Reply, at 2.)  Plaintiffs went on to define the "chair portion" of the strip search as "forcing inmates to sit on un-sanitized chairs without wiping off the previous women's bodily fluids, forcing the inmates to use their unwashed hands to spread their genitals for visual inspection, forcing the inmates to then use their unwashed hands to touch their mouths, having the women 'spread labia' while menstruating, and having the women 'spread labia' in view of other prisoners after every visit in which a prisoner was allowed physical contact with her visors or went on any off-site trip." (*Id.* at 2-3.)  Plaintiffs argued in their reply that the more narrow class definition neutralized Defendants' arguments regarding ascertainability and noted that the class could be ascertained from objective criteria - grievances filed by female inmates regarding the strip search practices at WHV.[3]

   In light of Plaintiffs' new proposed class definition, this Court ordered supplemental briefing from the Defendants.  (*See* ECF Nos. 52 & 53.)  Yet, the Court now declines to address the first two proposed class definitions because during oral argument Plaintiffs proposed a *third*

---

[3] The Court notes that Plaintiffs' second proposed class includes potential members who were "eligible" for offsite trips and contact visits but who may not have actually had any contact visits or gone on an offsite trip.  Accordingly, as defined, Plaintiffs' second proposed class definition includes women who never were subject to the search at issue and making the class too broad.

class definition that consisted of two subclasses: The first subclass would consist of any women who are currently, or have formerly been, incarcerated at the Women's Huron Valley Correctional Facility who were subject to the "chair portion" of the strip search in view of others between November 1, 2010 and November 1, 2013, and who have alleged to have suffered a compensable injury as a result of the search. Plaintiffs then proposed a second subclass defined as any women who are currently or have formerly been incarcerated at the Women's Huron Valley Correctional Facility who were subject to the chair portion of the strip search between November 1, 2010 and December 16, 2011, who alleged that the search was performed in unsanitary or unhygienic conditions and who also suffered a compensable injury arising from that search.

As an initial matter, as discussed during the hearing and conceded by Plaintiffs' attorney, the Sixth Circuit's decision affirmed this Court's holding that Defendant Warren was not protected by qualified immunity *to the extent* that the subject searches were performed in full view of other female prisoners. *See Salem v. Michigan Dep't of Corr.*, 643 F. App'x 526, 531(6th Cir. 2016) ("Thus, viewing the facts in a light most favorable to Plaintiffs, we uphold the judgment of the district court denying qualified immunity to Warren regarding the non-private searches."). Plaintiffs' proposed second subclass defines a strip search that does not include any allegation regarding "non private" strip searches and in fact appears to be a subclass designed to capture those potential class members who were *not* searched in full view of other female prisoners. Accordingly, the Court finds this subclass definition is outside the scope of this action after the Sixth Circuit's remand affirming the denial of qualified immunity as to Defendant Warren in this regard. Thus, the only relevant portion of the third proposed class definition is the

9

first subclass as defined by Plaintiffs: Any women who are currently, or have formerly been, incarcerated at the Women's Huron Valley Correctional Facility who were subject to the "chair portion" of the strip search in view of others between November 1, 2010 and November 1, 2013, and who allege they have suffered a compensable injury as a result of the search.

Plaintiffs' new third proposed class definition negates Defendants' earlier arguments in its response and sur-reply regarding potential over-breadth because the new definition narrows the proposed class to women who suffered compensable injuries related to the "chair portion" of the strip search in full view of others during a discrete time frame. The Court also rejects Defendants earlier argument that Plaintiffs' proposed class definition constitutes an improper fail-safe class. As explained by the Sixth Circuit, "a 'fail-safe' class is one that includes only those who are entitled to relief. Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment – either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." *Id.* (citation omitted); *see also Schilling v. Kenton Cnty., Ky.*, No. 10-142-DLB, 2011WL 293759, at *5 (E.D. Ky. Jan. 27, 2011) ("The class definition should avoid subjective standards such as the plaintiff's state of mind or terms that depend on a merits adjudication. A class definition is therefore too general where it requires the Court to determine whether an individual's constitutional rights have been violated in order to ascertain membership in the class itself.") Defendants reasoned in their sur-reply that "liability must be determined before the class member can be part of the class because it is not simply that the class member was subjected to the chair-based strip search which creates liability, it is whether that prisoner was subjected to a search without a properly-sanitized chair, or not provided with a disposable seat cover, or the search was conducted in view of other

prisoners." (Defs.' Sur-reply, at 8-9.) Here, Plaintiffs have proposed a third class definition that includes all the women who were subject to the pattern or practice of the "chair portion" of the strip search during pertinent time period. Unlike a fail safe class, this definition does not depend upon a merits adjudication or include any subjective standards. Defendants' argument appears to be that the Court would have to make individual inquiries regarding the manner of the search to determine the constitutional validity of each strip search claim, however, this argument an argument that the Plaintiffs' claims lack commonality, not that the definition constitutes an impermissible fail safe class or is unascertainable.

In summary, the Court concludes that Plaintiffs' third proposed class definition is ascertainable and can be determined based on objective criteria such as exhausted grievances. Despite having an ascertainable class, the Court concludes that Plaintiffs' motion for class certification must be denied at this time for the reasons examined below.

B.      Numerosity

Pursuant to Rule 23(a)(1), the numerosity requirement is satisfied when "the class is so numerous that joinder of all members [of the class] is impracticable." FED. R. CIV. P. 23(a)(1). In its initial motion for class certification Plaintiffs represented that there were 700 or more potential class members. In their reply brief, which proposed a second, more narrow definition, Plaintiffs represented that there were "110 potential class members who have exhausted the internal grievance policy of the MDOC regarding the 'chair portion' of Defendants' strip search." (Pls.' Reply, at 5). It was unclear at the hearing if the third proposed class definition affected the potential class members – especially in light of a proposed second subclass that applied to searches that are outside the scope of this action. The Court finds the lack of clarity and

11

consistency on this issue telling.  While a plaintiff need not know an exact figure to meet the numerosity requirement, Plaintiffs must "demonstrate that the number of potential class members is large." *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 601 (E.D. Mich. 1985).  Here, Plaintiffs' initially represented a number of 700 potential members and then in their response briefing Plaintiffs represented a potential call of 110.  Plaintiffs did not provide any particular basis, rationale, or evidence in support of their representation that there are 110 potential class members, and during oral argument Plaintiffs' counsel noted that they have not yet received the pertinent grievances in discovery.  Indeed, it is completely unclear how many of the potential members will fall within the new third proposed class definition addressed above and how many were part of the second inapplicable subclass addressed *supra*.

Given the complete lack of clarity on this issue, the Court finds that Plaintiffs have not met the numerosity requirement of Rule 23(a) at this time.

C.      Adequacy and Typicality

The Court also finds that Plaintiffs may not be adequate class representatives and their claims may not be typical of those of the proposed class as required by Rule 23(a).  Pursuant to Rule 23(a)(4), the court must find that the "representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  The Sixth Circuit has held that there are two criteria for determining the adequacy of representation: "1) the representative must have common interests with unnamed members of the class; 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."  *In re Am. Med. Sys. Inc.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).  The typicality test in Rule 23(a)(3) "'limit[s] the class claims to those fairly

12

encompassed by the named plaintiff's claims.'" *Sprague v. General Motors Corp.*, 133 F.3d

388, 399 (6th Cir. 1998) (alteration in *Sprague*, citation omitted). "A necessary consequence of

the typicality requirement is that the representative's interests will be aligned with those of the

represented group, and in pursuing his own claims, the named plaintiff will also advance the

interests of the class members." *Young*, 693 F.3d at 542 (citation omitted).

 Here, the named Plaintiffs allege that they were subject to the same "chair portion" of the

strip search by Defendants as the rest of the proposed class and thus share a common and typical

injury and interest with those proposed class members. However, as noted above, "Rule 23 does

not set forth a mere pleading standard. A party seeking class certification must affirmatively

demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in*

*fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 131 S.Ct. at

2551 (emphasis in original).

 In the present case, Plaintiff Abcumby provided in her affidavit that she was subject to the

"chair portion of the strip search" in full view of others. Yet, Plaintiff Salem has not alleged in

the complaint or in her affidavit that she was subject to the "chair portion of the strip search" in

view of other people. (*See* ECF No. 17, Ex. 4, Salem Aff.; ECF No. 19, Salem Am. Aff.) Thus,

Plaintiff Salem does not fall within Plaintiffs' third proposed class definition and her claim is not

typical of the class.

 Additionally, Defendants have raised substantive and non-frivolous concerns regarding

exhaustion of grievances. It is unclear from the complaint, affidavits, and briefing whether the

named representative Plaintiffs have exhausted their claims as required by the Prison Litigation

Reform Act. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) (holding that "[t]here is no question

that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The Court recognizes that Plaintiffs have no duty to plead exhaustion. *See Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies."). Yet, in the present case there are real concerns over whether either named Plaintiff exhausted their grievances. (*See* Compl., ¶¶ 35-38, alleging that Plaintiffs "are regularly not allowed to file grievances challenging policies or procedures and Defendants do not provide an alternative administrative mechanism to exhaust the claims set forth in this Complaint.").

Thus, the Court is faced with the unappealing prospect of certifying a class only to have both named Plaintiffs later dismissed from the suit based on a failure to exhaust their claims. *See Johannes v. Washington*, No. 14-cv-11691, 2015 WL 5634446, at * 9-10 (E.D. Mich. Sept. 25, 2015) (Michelson, J.) (declining to certify a class before addressing threshold issue of exhaustion because defendants raised "non-trivial concerns about exhaustion" and "[o]therwise the Court risks certifying a class only to later find that the claims of all six of the class representatives must be dismissed, and, therefore, their claims are atypical and they are inadequate class representatives."). These legitimate concerns lead the Court to conclude that Plaintiffs have not satisfied the requirements of Rule 23(a)(3) and (4) and have not shown that the named Plaintiffs are adequate representatives of the potential class or that their claims are typical of the class. Accordingly, the Court concludes that it would be imprudent to certify a class at this time.

In summary, the Court finds, after a "rigorous analysis," that Plaintiffs have not carried their burden and shown that they satisfied the requirements of Rule 23(a). Specifically, the Court finds that Plaintiffs have not shown that the potential class is sufficiently numerous to meet the

14

standard of Rule 23(a)(1).  Further, class certification at this time would be improper based on the fact that the named Plaintiffs do not appear to be adequate representatives and either fall outside the proposed class definition or may not have claims typical to the class based on a failure to exhaust their administrative remedies.  Because Plaintiffs have failed to satisfy the requirements of Rule 23(a)(1), (3) and (4), the Court need not reach the issue of commonality or whether Plaintiffs' claims meet the standards of Rule 23(b).

## IV. CONCLUSION

For all these reasons, the Court DENIES Plaintiffs' Motion for Class Certification without prejudice (ECF No. 44).  The Court also DISMISSES the official capacity claims against Defendants Daniel Heyns, Thomas Finco, Randy Treacher, Dennis Straub as duplicative.

IT IS SO ORDERED.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:      DEC 2 2 2016